IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRIDAY APALISKI, ANGELIQUE FISH, JOHN JOYAL, JAMIE WATERMAN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-1548-RGA |
| MOLEKULE, INC., | ) ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, AN AWARD OF ATTORNEYS' FEES AND COSTS,
AND FOR SERVICE AWARDS FOR THE NAMED PLAINTIFFS**

OF COUNSEL:

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St., NE
Washington, DC 20002
(202) 470-3520
E-mail: nmigliaccio@classlawdc.com
        jrathod@classlawdc.com

P. Bradford deLeeuw (No. 3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
Email: brad@deleeuwlaw.com

Dated: December 21, 2021

# TABLE OF CONTENTS

Nature and Stage of the Proceedings ................................................................................. 1

Summary of the Argument .............................................................................................. 2

Statement of Facts ........................................................................................................ 4

I.    Procedural History and General Factual Background ..................................................... 4

II.   The Key Terms of the Settlement ............................................................................ 4

Argument ................................................................................................................... 5

I.    The Court Should Finally Approve the Settlement and the Notice Plan ..................... 5

      A.  Legal Standard ............................................................................................... 5

      B.  The Settlement is Fair and Reasonable ............................................................... 6

            1.   The Settlement is Entitled to a Presumption of Fairness ............................. 6

            2.   The *Girsh* Factors Support Final Approval ........................................... 8

            3.   The *Prudential* Factors Support Final Approval ..................................... 11

      C.  The Notice Satisfied all Constitutional Due Process and Rule 23 Requirements
            ....................................................................................................................... 13

      D.  The Settlement Class Should be Certified ............................................................ 14

II.   The Court Should Approve Class Counsel's Request for Attorneys' Fees and Costs
      ....................................................................................................................... 14

      A.  The Fee is Reasonable Under the Percentage of Recovery Method ..................... 14

      B.  A Lodestar Cross-Check Confirms the Reasonableness of the Fee ..................... 18

III.  The Court Should Approve the Request for Service Awards to the Class Representa-
      tives ......................................................................................................... 19

Conclusion ................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)……………………………………………………….……......14

*Batties v. Waste Mgmt. of Pa., Inc.*,
No. 14-7013, 2016 U.S. Dist. LEXIS 186335 (E.D. Pa. May 11, 2016)…………..…………..20

*Bredbenner v. Liberty Travel, Inc.*,
No. 09-905 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011)…………………………………… . .20

*Caddick v. Tasty Baking Co.*,
No. 2:19-cv-02106-JDW, 2021 U.S. Dist. LEXIS 206991 (E.D. Pa. Oct. 27, 2021)……………..5

*Du v. Blackford*,
No. 17-cv-194, 2018 U.S. Dist. LEXIS 211796 (D. Del. Dec. 18, 2018)……………………..…9

*Fitzgerald v. Gann Law Books*,
No. 2:11-04287(KM)(SCM), 2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) ….……..10

*Galt v. Eagleville Hosp.*,
310 F. Supp. 3d 483 (E.D. Pa. 2018)……………………………………………………..……6

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)………………………………………………………….……..*passim*

*Granillo v. FCA US LLC*,
No. 16-153 (FLW) (DEA), 2019 WL 4052432 (D.N.J. Aug. 27, 2019)………………………...20

*Haas v. Burlington Cty.*,
No. 08-1102-NHL-JS, 2019 WL 413530 (D.N.J. Jan. 31, 2019)…………………….…....……9

*Hall v. AT&T Mobility LLC*,
No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010)…………...............6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)…………………………………………………….…..………....14

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011)……...............6

*Henderson v. Volvo Cars of N. Am., LLC*,
No. 09-4146 (CCC), 2013 WL 1192479 (D.N.J. Mar. 22, 2013)…………..……………16, 19

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)…………………………………………………...……12

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019)…………………………………………...………..12

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)………………………………………………….......6,10

*In re Fasteners Antitrust Litig.*,
No. 08-md-1912, 2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014)………..…………..…18

*In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*,
301 F.R.D. 191 (E.D. Pa. 2014)…………………………………………………..…*passim*

*In re Processed Egg Prod. Antitrust Litig.*,
2016 WL 3584632 (E.D. Pa. June 30, 2016)……………………….………….…………..…17

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998)…………………………….……………..………………*passim*

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)…………………………………………………..14,18

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
No. 4:12-MD-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016)……………………...……10

*In re Synchronoss Techs., Inc.*,
No. 20-07150 (FLW), 2021 U.S. Dist. LEXIS 238014 (D.N.J. Dec. 13, 2021)……………....19

*In re ViroPharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)…………………….…..…….…....6

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)…………………………………………….…….…16

*In re Wilmington Tr. Sec. Litig.*,
No. 10-cv-0990-ER, 2018 U.S. Dist. LEXIS 196644 (D. Del. Nov. 19, 2018)…………...…17

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
639 F. App'x 880 (3d Cir. 2016)…………………………………………………...……10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)……………………………………………...…………………….…14

*Nyby v. Convergent Outsourcing, Inc.*,
No. 15-886 (ES) (MAH), 2017 U.S. Dist. LEXIS 122056 (D.N.J. Aug. 3, 2017)…………..…….9

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
No. 11-2164, 2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017)………………………..14, 15

*Rothschild Dig. Confirmation LLC v. CompanyCam, Inc.*,
No. 19-1109 (MN), 2021 U.S. Dist. LEXIS 34084 (D. Del. Feb. 23, 2021)……………..….……19

Rougvie v. Ascena Retail Grp., Inc.,
No. 15-724, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016)……………………………16

*Schuler v. Medicines Co.,*
No. 14-1149 (CCC), 2016 WL 3457218 (D.N.J. Jun 23, 2016)……………………….……….....7

*State v. Overstock. co, Inc.,*
2019 WL 5420100 (Del. Super. Ct. Oct. 23, 2019)………………………………….................19

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011)…………………………………………………...............…*passim*

*Talone v. American Osteopathic Ass'n,*
No. 1:16-CV04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018)……………..…………20

*Teh Shou Kao & T S Kao v. Cardconnect Corp.*,
No. 16-cv-5707, 2021 U.S. Dist. LEXIS 33147 (E.D. Pa. Feb. 23, 2021)…………..…………8

*Thorne v. Pep Boys Manny Moe & Jack Inc.,*
980 F.3d 879 (3d Cir. 2020)……………………………………………………...………11

*Udeen v. Subaru of Am., Inc.*,
No. 18-17334(RBK/JS), 2019 WL 4894568 (D.N.J. Oct. 4, 2019)………………………..*passim*

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
2020 U.S. Dist. LEXIS 69614 (E.D. Pa. April 20, 2020)……………………………..……12

*Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.*),
No. 99-5555, 243 F.3d 722 (3d. Cir. 2001)…………………………………………………...18

*Whiteley v. Zynerba Pharm., Inc.*,
No. 19-4959, 2021 U.S. Dist. LEXIS 176101 (E.D. Pa. Sep. 16, 2021)………………………...17

*Wood v. Saroj & Manju Invs. Phila. LLC*,
No. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960 (E.D. Pa. May 13, 2020)…………………17

<u>Rules</u>

28 U.S.C. § 1715(d)………………………………………………………………………………5

FED. R. CIV. P. 23……………………………………………………………...……*passim*

FED. R. CIV. P. 23(e)(2)…………………………………………………………………………5

FED. R. CIV. P. 23(f)………………………………………………………………………………9

FED. R. CIV. P. 23(c)(2)(B)…………………………………………………………………13,14

Plaintiffs Friday Apaliski, Angelique Fish, John Joyal, and Jamie Waterman ("Plaintiffs") respectfully submit this brief in support of their Unopposed Motion for Final Approval of Class Action Settlement, an Award of Attorneys' Fees and Costs, and for a Service Award for the Named Plaintiffs.[1] The Parties have provided notice to the Settlement Class and its reaction has been very positive. Over 5,000 individuals have already submitted claims, while only four Settlement Class Members have submitted requests for exclusion. None have submitted objections. This positive response strongly supports granting final approval of the settlement.

## NATURE AND STAGE OF THE PROCEEDINGS

Under the Settlement, Defendant Molekule, Inc. ("Molekule" or "Defendant") will provide a non-reversionary common Class Cash Fund of $1.3 million. Defendant will also provide a Class Coupon Fund of up to $1.4 million in coupons, which can be used toward the purchase of an Air Purifier filter or filter subscription, and which are fully transferrable. The Court granted Plaintiffs' Motion for Preliminary Approval on October 12, 2021 (D.I. 20).

The Claim Administrator RG/2 Claims Administration LLC ("RG/2") has carried out the Notice Plan in accordance with this Court's Preliminary Approval Order. *See* Declaration of Dana Boub ("Boub Decl.") ¶ 5, attached hereto.  Through subpoenas served on retailers Best Buy and b8ta by Class Counsel, RG/2 compiled a "class list" for which to provide direct notice, which consisted of 5,417 potential Settlement Class Members. *Id*, ¶ 9. On November 11, 2021, RG/2 arranged for a notice postcard to be mailed to the 5,417 potential Settlement Class Members.  *Id,* ¶ 10. The Email Notice was also emailed to 5,390 potential Settlement Class Members

---

[1] The Settlement Agreement ("Settlement" or "Agreement") and its exhibits are attached as Exhibit 1 to the Declaration of Jason S. Rathod (the "Rathod Decl."), filed at Preliminary Approval (D.I. 18-1). All capitalized terms not otherwise defined shall have the same definitions as in the Agreement. *See* D.I. 18-1, § 2. Air Purifiers are defined as the Molekule Air, Molekule Air Pro, Molekule Air Mini, Molekule Air Mini+, and the Molekule Air Pro Rx air purifiers.

for whom an email address was provided.  RG/2 then performed a standard skip-trace procedure and re-mailed 102 Notices for whom the initial mailing was returned as undeliverable[2] and an updated address was located.  *Id.,* ¶ 11. Separately, Amazon, who sold the vast majority of the Air Purifiers during the class period, sent an email notice of the Settlement to potential Settlement Class Members that were its customers. *See* generally Declaration of Stephanie Habben ("Habben Decl."), attached hereto. Specifically, on November 29, 2021, an email notice for the settlement was disseminated to those purchasers, totaling 53,609 email addresses. Habben Decl., ¶¶ 4-6. The message was successfully delivered to 95.6 percent of the addresses. *See id.*, ¶ 7. On November 11, 2021, RG/2 arranged for the Publication Notice to be published in the Los Angeles Times and the Washington Post. *See* Boub Decl., ¶ 13. The Settlement website, www.airpurifiersettlement.com, went live on November 11, 2021.  *Id,* ¶ 14.

Settlement Class Members' reactions to the Settlement so far have been overwhelmingly positive. To date, 5,448 claims have been filed. The claim deadline is May 31, 2022. Assuming all of the claims filed to-date are approved, the claim rate would be 30 percent, which is far higher than that in most consumer class action settlements. Further, only four Settlement Class Members[3] have opted out, and no objections were filed.  This positive response weighs strongly in favor of final approval of the settlement and the attorneys' fees, costs, and service awards.

## SUMMARY OF THE ARGUMENT

This Court should grant Plaintiffs' Unopposed Motion because:

1.        The Agreement meets the standard for final approval since it is a fair, adequate, and reasonable resolution of the claims of Plaintiffs and the putative class. The

---

[2] 162 notices were initially returned as undeliverable.

[3] The Claim Administrator reported that a total of nine individuals filed an opt-out form but was only able to confirm four of these individuals are potential Settlement Class Members.

Agreement is presumed fair since (a) it resulted from arm's length negotiations with the assistance of a neutral, nationally recognized mediator; (b) Class Counsel had a strong grounding in the facts and merits before entering into the Agreement; and (c) counsel for both parties bring substantial experience in consumer class action litigation, and endorse the Agreement's fairness. The Settlement provides for a meaningful recovery in the short-term with a significant common Class Cash Fund, which is non-reversionary, as well as a substantial coupon fund. By contrast, litigation carries considerable risk of no recovery or a lesser recovery years from now.

2.   The Settlement Class should remain certified because the Rule 23(a) elements and Rule 23(b)(3) elements are satisfied and certification is necessary to realize the Settlement's benefits.

3.   The Claim Administrator, within 30 days of the Court's Preliminary Approval Order, initiated the Notice Plan as set forth in the Settlement Agreement. In so doing RG/2 disseminated the claim form approved by this Court, which satisfies all constitutional due process and Rule 23 requirements. The reaction of the Settlement Class has been very positive with over 5,000 claims already filed, only four requests for exclusion from potential Settlement Class Members, and no objections. The expected claims rate is much higher than in most consumer class actions.

4.   The Court should approve Class Counsel's request for attorneys' fees and costs of $410,000 because it represents less than 1/3 of the Class Cash Fund and far less than the total consideration provided when the coupon fund is included. Moreover, conducting a lodestar cross-check confirms the propriety of the award since it results in a negative multiplier.

5.   The Court should approve service awards to the class representatives because they played a key role in the case and the size of the awards is consistent with other class action settlements.

For these reasons, the Court should enter the proposed Final Approval Order.

## STATEMENT OF FACTS

### I.        Procedural History and General Factual Background

Plaintiffs incorporate their recitation of the procedural history and general factual
background as set forth in Opening Brief in Support of Plaintiffs' Unopposed Motion for Prelim-
inary Approval of Class Action Settlement and for Certification of the Class for Purposes of Set-
tlement ("Preliminary Approval Brief") [D.I. 18].

### II.       The Key Terms of the Settlement

The settlement terms are described more fully in the Preliminary Approval Brief, but
Plaintiffs provide a brief summary here for ease of reference. Under the Agreement, Defendant
will provide a non-reversionary common Class Cash Fund in the amount of $1.3 million. *See*
Agreement, ¶ 2.14. Defendant will also provide a Class Coupon Fund of up to $1.4 million in
coupons, which can be used toward the purchase of an Air Purifier filter or filter subscription,
and which are fully transferrable. *See* Agreement, ¶ 2.15.

Settlement Class Members will be able to claim their share of the Settlement through a
Claim Form. *See* Agreement, Ex. A. They can submit a Claim under either Group A or Group B.
*See* Agreement, ¶ 3.6. Both groups receive a pro rata amount from the Cash Fund and Coupon
Fund, but Group A submissions require certain supporting material demonstrating proof of pur-
chase, while Group B submissions do not. *See id.*, ¶¶ 3.6-3.8. In turn, Group A claimants are en-
titled to a greater share of the settlement benefits. *See id.* The Claim Form also allows for Claim-
ants to state how many Air Purifiers and which models they purchased, all of which are ac-
counted for in the formula for calculating benefits to each Class Member. *See id.*, Ex. A. Settle-
ment Class Members for whom the Parties have received contact information from a third-party
seller are deemed to have submitted a valid claim under Group A without the need to provide a

claim form or substantiating proof. *See* Agreement, ¶ 3.13.

To date, RG/2 has received 5,961 electronically submitted claims and 147 paper claims. Of the Claims filed, 1,938 selected Group A. Boub Decl. ¶ 19.

On October 24, 2021, RG/2 served the United States Attorney General and the Attorneys General of all 50 states, the District of Columbia, and the five U.S. territories a notice of the Settlement consisting of: a copy of the complaint in this action; a notice of the scheduled judicial hearing in this class action, copies of the Settlement, and the proposed notice. Boub Decl. ¶ 6 & Ex. A. No state officials have provided any comments to the Parties. *Id.*, ¶ 7 The Final Approval Hearing, set for January 25, 2022, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

## ARGUMENT

### I.  The Court Should Grant Final Approval

### A.  Legal Standard

The Court's review of a class action settlement involves two steps: preliminary approval and final approval. *Udeen v. Subaru of Am., Inc.*, No. 18-17334(RBK/JS), 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019). Having granted preliminary approval, the Court must hold a hearing for final approval and find the settlement "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).

Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014). This approach is consistent with the principle that "[t]he law favors settlement, particularly in class actions."  *Caddick v. Tasty*

*Baking Co.*, No. 2:19-cv-02106-JDW, 2021 U.S. Dist. LEXIS 206991, at *11 (E.D. Pa. Oct. 27, 2021) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also Udeen*, 2019 WL 4894568, at *2 ("A settlement is presumed fair when it results from arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal citations and quotations omitted).

## B. The Settlement is Fair, Reasonable, and Adequate

### 1. The Settlement is Entitled to a Presumption of Fairness

The Settlement should be approved because it satisfies the conditions precedent for the presumption of fairness to attach. "In this Circuit, a settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and there were no objectors and only a small percentage of opt-outs." *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018).

*First*, the Settlement resulted from arm's length negotiations, including an all-day mediation before a nationally-recognized mediator, Antonio Piazza. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr. 29, 2011) (finding that a negotiated resolution with Mr. Piazza's assistance "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") (quoting *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)). Indeed, the fact that the parties were unable to reach agreement during the mediation, and that Mr. Piazza made a mediator's proposal, is further

evidence of the arm's-length nature of the negotiations in this case.

*Second*, Class Counsel had a thorough understanding of the merits before reaching the proposed settlement. Among other things, Plaintiffs and Class Counsel: (i) conducted an extensive investigation prior to filing the Complaint; (ii) served settlement discovery requests on Defendant; (iii) reviewed and analyzed Defendant's settlement production; (iv) consulted extensively with an environmental engineering expert who specializes in indoor air quality and commissioned a report by him; and (v) exchanged mediation statements and participated in mediation with Defendant which set forth the strengths of each side's positions regarding certification, liability, and damages. *See* Rathod Decl., ¶¶ 4-10; Supplemental Declaration of Jason S. Rathod, attached hereto ("Supp. Rathod Decl."), ¶ 3. This work provided Class Counsel with a sound basis to conclude that the Agreement was in the best interests of Plaintiffs and the Settlement Class. *See e.g., Schuler v. Medicines Co.,* No. 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. Jun 23, 2016) (noting that "[a]lthough there has been no formal discovery, Lead Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement" and had reviewed publicly-available information, conducted an extensive investigation, consulted with an expert, drafted the initial and amended complaints, briefed an opposition to defendants' motion to dismiss, and engaged in mediation).

*Third*, the proponents of the Settlement are experienced in similar litigation. Class Counsel have a wealth of experience in consumer class action litigation. *See* Rathod Decl., ¶ 14; Supp Rathod Decl., ¶ 6. Defendant's counsel, too, has substantial experience. *See* Rathod Decl., ¶ 15.

*Finally*, there are no objectors to the Settlement and less than a handful of requests for exclusion from potential Settlement Class Members.

## 2. The *Girsh* Factors Support Final Approval

The *Girsh* factors support final approval.[4] The complexity, expense, and likely duration
support final approval because, without the Settlement, the parties would be engaged in con-
tested motion practice and adversarial discovery for years. The claims advanced for the Settle-
ment Class Members involve numerous complex legal and technical issues. Continued litigation
would be complex, time consuming and expensive, with no certainty of a favorable outcome.
The Settlement Agreement secures substantial benefits for the Class with none of the delay, risk
and uncertainty of continued litigation.

The reaction of the Settlement Class to the Settlement agreement strongly supports ap-
proval. Thus far, the Claim Administrator has received 6,1088 claims. Boub Decl., ¶ 19. This
claims rate of approximately 33% is particularly impressive given that the claims period will
continue until May 31, 2022. This figure is also noteworthy when compared to claims rates in
most consumer cases. *See, e.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011)
(citing evidence suggesting that "consumer claim filing rates rarely exceed seven percent, even
with the most extensive notice campaigns"); *Teh Shou Kao & T S Kao v. Cardconnect Corp.*,
No. 16-cv-5707, 2021 U.S. Dist. LEXIS 33147, at *20 (E.D. Pa. Feb. 23, 2021) (approving a

---

[4] The factors originated from *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), in which the Third
Circuit directed district courts to analyze the following nine factors at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) stage of the proceedings and the amount of dis-
> covery completed; (4) risks of establishing liability; (5) risks of establishing dam-
> ages; (6) risks of maintaining the class action through the trial; (7) ability of the
> defendants to withstand a greater judgment; (8) the range of reasonableness of the
> settlement fund in light of the best possible recovery; and (9) the range of reason-
> ableness of the settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Id.* at 157.

settlement with a claims rate of 4.32%); *Nyby v. Convergent Outsourcing, Inc.*, Civil Action No. 15-886 (ES) (MAH), 2017 U.S. Dist. LEXIS 122056, at *18 (D.N.J. Aug. 3, 2017) (approving a settlement and noting that the 10% claims rate was above average in a consumer class action case). Meanwhile, the parties only received four requests for exclusion from potential Settlement Class Members and received zero objections. *See Du v. Blackford*, No. 17-cv-194, 2018 U.S. Dist. LEXIS 211796, at *16 (D. Del. Dec. 18, 2018) ("In that no shareholder has objected to the settlement, this factor weighs heavily in favor of settlement.").

The third factor, the stage of the proceedings and the amount of discovery completed, also supports final approval. Class Counsel have conducted settlement discovery and completed an expert report following a thorough independent investigation into alleged false advertising of the Air Purifiers. This work has allowed Class Counsel to understand the strengths and weaknesses of their case, and has allowed them to analyze the risk of future litigation in comparison to the relief offered by the Agreement. *Udeen*, 2019 WL 4894568, at *3.

The fourth, fifth, and sixth factors all analyze the risk of continued litigation. If the parties had been unable to resolve this case through the Agreement, the litigation would likely have been protracted and costly. Class Counsel have litigated many consumer protection class actions that have taken several years to conclude. *See* Rathod Decl. ¶ 26. Before ever approaching a trial in this case, the parties likely would have briefed at least one motion to dismiss, class certification (along with a potential Rule 23(f) appeal), and summary judgment – in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is therefore unlikely that the case would have reached trial before 2024, with post-trial activity to follow. *See Haas v. Burlington Cty.*, No. 08-1102-NHL-JS, 2019 WL 413530, at *6 (D.N.J. Jan. 31, 2019) (granting approval where the estimated time to judgment would be another three years).

Courts routinely find the seventh factor – the defendant's ability to withstand greater judgement – to be neutral. Such a factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016). This not a factor here.

Finally, the remaining *Girsh* factors – the range of reasonableness of the settlement both independently and weighed against the risk of further litigation – support final approval. The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan*, 667 F.3d at 323. And in conducting the analysis, the court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim…. and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations omitted).

Here, the Agreement contains a significant non-reversionary common Class Cash Fund. This non-reversionary structure is highly beneficial to the Settlement Class Members because all of the Class Cash Funds will be distributed pro-rata among the claimants — rather than reverting to Defendant. Such a result is materially better than that provided by class action settlements that have recently received the blessing of the Third Circuit. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 882 (3d Cir. 2016) (affirming a distict court's order granting final approval even though the common fund contained a reverter in which more than half of the common funds reverted back to the defendant); *Fitzgerald v. Gann Law Books*, No.

2:11-04287(KM)(SCM), 2014 U.S. Dist. LEXIS 174567, at *30-31 (D.N.J. Dec. 17, 2014) ("re-version of funds to the defendant creates a potential discrepancy—I mean the discrepancy be-tween a big settlement and a big- *sounding* settlement").

Assuming here that each of the 6,108 claims submitted thus far are valid,[5] the gross pro rata share per Settlement Class Member is about $130, a substantial sum. In litigation, Plaintiffs would have principally proceeded on a "benefit of the bargain" theory of damages under which they would have attempted to isolate a price premium attributable to the alleged false advertis-ing. Prevailing at class certification and on the merits on such a theory would be far from certain. *See, e.g., Thorne v. Pep Boys Manny Moe & Jack Inc.,* 980 F.3d 879, 889 (3d Cir. 2020) (reject-ing benefit of the bargain measure of damages based on facts pled). Even if they did, the dam-ages amount per class member could quite possibly have been less than that provided for under the Agreement. Even without considering the $1.4 million coupon fund, then, the Agreement is a more than fair outcome for Settlement Class Members.

### 3.  The *Prudential* Factors Support Final Approval

The Third Circuit also permits courts to consider additional factors when evaluating set-tlement agreements.  In *In re Prudential*, the court identified additional factors that the Court may consider in evaluating a settlement agreement.[6] "Unlike the *Girsh* factors, each of which the

---

[5] Plaintiffs submit that this represents a reasonable estimate. Some of the claims will be denied but additional claims will be submitted and accepted up to the May 31, 2022 deadline.

[6] 1."the maturity of the underlying substantive issues, as measured by the experience in adjudi-cating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages"; 2. the "existence and probable outcome of claims by other classes and subclasses"; 3. "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants"; 4."whether class or subclass members are accorded the right to opt out of the settlement"; 5. "whether any provisions for attorneys' fees are reasonable"; and 6."whether the

11

district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential.  They are permissive and non-exhaustive ..."  *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 384 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).

The first *Prudential* factor is met here because the information disclosed by the parties, the independent investigation performed by Class Counsel, and research of key legal issues by counsel have enabled the parties to gain a strong grasp of the case and its probable outcome. *See Id.* ("Here, Class Counsel were able to make an informed decision about the probable outcome of a trial."). The parties were therefore able to make an informed decision prior to agreeing to the Settlement.

"Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 U.S. Dist. LEXIS 69614, *67 (E.D. Pa. April 20, 2020). There is only one other open case against Molekule involving similar allegations, which was filed on September 5, 2021, with a response to the Complaint not due until February 7, 2022. Given the early nature of this suit, this factor supports final approval.

Since the Settlement permits individuals to opt out, the fourth *Prudential* factor is satisfied. Moreover, for the reasons expressed below, the fifth factor, reasonable attorneys' fees, is met as well.

The procedure for processing claims under the Settlement is also fair and reasonable. The two hundred (200)-day Claim Period gives Settlement Class Members substantial time to claim their benefits under the Settlement. They can access Settlement proceeds by submitting a Claim Form containing the basic information outlined in ¶ 3.15 of the Settlement Agreement and

---

procedure for processing individual claims under the settlement is fair and reasonable." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998).

access the greater pro-rata Group A payments by submitting proof of purchase. So long as the

requested email address is provided, RG/2 will email the Settlement Class Member within thirty-

five (35) days as to whether the Claim will be accepted or denied.  Agreement ¶ 3.17.  For those

Settlement Class Members whose claim is denied, the email from the Claim Administrator will

state the reasons for denial.  *Id.*  The Settlement Class Member has fourteen (14) days to cure the

deficiency or deficiencies that caused the denial of the Claim.  *Id.*  Finally, the claims are evalu-

ated by a third party entity rather than the Defendant, and Class Counsel have the opportunity to

audit all denials. *Id*. at ¶ 3.19.

### C.  The Notice Satisfied all Constitutional Due Process and Rule 23 Requirements

The notice provided to the Settlement Class satisfies both Fed. R. Civ. P. 23 and the Due

Process Clause of the Constitution.

Fed R. Civ. P. 23(c)(2)(B) states that "the court must direct to class members the best no-

tice that is practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort."  Here, RG/2 then sent direct mail notifications to the

Settlement Class Members.  RG/2 further provided an email notice to those members of the Set-

tlement Class that RG/2 obtained an email address.  Finally, RG/2 published notices in the

Washington Post and Los Angeles Times, created a dedicated website to provide notice of the

settlement, and operated a toll-free telephone line.

In the Order Granting Preliminary Approval, this Court noted that the dissemination of

the notices substantially in the manner and form set forth by the Settlement Agreement consti-

tuted the best practicable notice under the circumstances. "In addition to the requirements of

Rule 23, due process further requires that notice be 'reasonably calculated, under all the circum-

stances, to apprise interested parties of the pendency of the action and afford them an opportunity

to present their objections.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

The notice program met all necessary legal requirements and provided a comprehensive explanation of the settlement in simple, non-legalistic terms. *See* Fed. R. Civ. P. 23(c)(2)(B). Having been apprised of their rights and opportunities, the Settlement Class Members were then given more than sufficient time to present their objections. The notice provided met both the requirements set forth in this Court's Order Granting Preliminary Approval of Class Action Settlement and Fed. R. Civ. P. 23.  Supp. Rathod Decl., ¶ 3.

### D.  The Settlement Class Should be Certified

In addition, the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *Udeen*, 2019 WL 4894568, at *4. As such, Plaintiffs seek the certification of the Settlement Class set forth above and in the Settlement Agreement.[7] For the reasons articulated in Plaintiffs' Brief in Support of Preliminary Approval, the Settlement Class should be certified.

### II.  The Court Should Approve Class Counsel's Request for Attorneys' Fees and Costs

### A.  The Fee is Reasonable under the Percentage of Recovery Method

"In common fund cases such as this one, attorneys' fees are typically awarded through the percentage-of-recovery method." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, Civil Action No. 11-2164, 2017 U.S. Dist. LEXIS 97909, at *28 (D.N.J. June 26, 2017) (*citing In re Rite Aid*

---

[7] Molekule has consented to certification of the class for settlement purposes only, and reserves its rights to challenge the class allegations in the Complaint (including at the class-certification stage) to the extent the Settlement is not approved for any reason.

14

*Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method provides

for attorneys' fees by awarding a reasonable percentage of the common fund. "The percentage-

of-recovery method is preferred in common fund cases because it 'rewards counsel for success

and penalizes it for failure." *Id.* (internal citations and quotations removed). When analyzing a

fee award under the percentage-of-recovery method, courts consider several factors,[8] analyzed

below. A "one-third fee is within the range of fees typically awarded within the Third Circuit

through the percentage-of-recovery method." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*,

Civil Action No. 11-2164, 2017 U.S. Dist. LEXIS 97909, at *34 (D.N.J. June 26, 2017).

Analysis of each of the factors validates the reasonableness of Plaintiffs' counsel's fee

request. *First*, for the size of the fund, it is $2.7 million, with $1.3 million in cash and $1.4 mil-

lion in coupons. The Class covers approximately 18,150 Air Purifiers and, with just the claims

filed to-date, there is a high claims rate of approximately 33 percent. This percentage is an under-

estimate, however, because the Settlement also provides for a process by which approximately

5,417 Settlement Class Members are eligible to have their claim deemed to be filed as a Group A

claim if, at the end of the Claim Period, they have not yet submitted a valid claim. *See* Agree-

ment, ¶ 3.13. The cash component is non-reversionary and the coupon component only reverts to

the extent that the face value of individual coupons (after a pro rata allocation) exceeds $250 per

person. *See* Agreement, ¶ 3.12. With the current claim rate, there would likely not be a coupon

---

[8] Specifically, including: 1) the size of the fund created and the number of persons benefitted; 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the amount of time devoted to the case by plaintiffs' counsel; 7) the awards in similar cases; 8) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; 9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and 10) any "innovative" terms of settlement. *See In re Prudential*, 148 F.3d at 338-40.

reversion or, at worst, a very minor one. The fee and expense request of $410,000 is reasonable because it represents less than a third of even just the Class Cash Fund. That is assigning *no value* to the coupon component, which is of appreciable value.[9]

*Second*, there were less than a handful of requests for exclusion and no objectors.

*Third*, the skill and efficiency of the attorneys is demonstrated by the result of the Settlement, which provides significant relief within a comparatively short period of time after the case was filed. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (noting that counsel for the class "showed their effectiveness through the favorable cash settlement they were able to obtain"). Class Counsel is also highly experienced in the area of consumer class actions and, in particular, false advertising and consumer product class actions.

*Fourth*, the case is complex, centering on the truthfulness of the advertising of an innovative product utilizing technology that differs from most comparable products on the market. Plaintiffs' counsel had to conduct an extensive pre-suit investigation before filing and also commissioned a comprehensive report from a subject expert prior to mediation. The case settled early, which is a result that should be encouraged.

*Fifth*, Class Counsel worked pursuant to a contingency fee arrangement, which includes a meaningful risk of non-payment. "Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." *Henderson v. Volvo Cars of N. Am.*, LLC, Civil Action

---

[9] Courts look to a number of factors in assessing the value of coupon funds, including: the transferability of coupons, the expiration period, and the percentage of claims. *Rougvie v. Ascena Retail Grp., Inc.*, No. 15-724, 2016 U.S. Dist. LEXIS 99235, at *83, 94 (E.D. Pa. July 29, 2016). Here the coupons are fully transferrable, redeemable for two years from issuance, and not subject to a minimum purchase requirement or redemption charge. Agreement ¶ 3.5. Meanwhile, the claims rate is already an impressive 33% with over five months to go. *See infra* Section I.B.2. As a result, the Settlement Class Members are deriving significant added value from the Class Coupon Fund despite the fund's exclusion from the percentage-of-recovery calculations. This underscores the reasonableness of Class Counsel's fee requests.

No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *52 (D.N.J. Mar. 22, 2013).

*Sixth*, Class Counsel dedicated significant time to prosecuting the case. As elaborated in the lodestar cross-check section below, Class Counsel had 586.50 hours for a lodestar of $405,308.70.

*Seventh*, awarding 1/3 of a common fund in attorneys' fees and expenses is standard practice. *See, e.g., Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960, at *32 (E.D. Pa. May 13, 2020) (approving an attorney fee award of approximately 33%); *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990-ER, 2018 U.S. Dist. LEXIS 196644, at *24-27 (D. Del. Nov. 19, 2018) (approving attorney fee and expenses award that, when combined, constituted over 30% of the common fund). Here, Class Counsel is taking substantially less than a third since they did not assign value to the $1.4 million coupon fund.

*Eighth*, the value of the benefits is largely attributable to the efforts of Class Counsel rather than other sources. There was no government investigation or action concerning the Air Purifiers. Class Counsel does acknowledge, however, that its Complaint drew heavily from public sources of information about the Air Purifiers, including reporting on a business to business dispute before the National Advertising Review Board by a competitor of Molekule. Ultimately, though, this information likely would have been inadmissible, which is why Plaintiffs retained an expert to produce a thorough report. *See In re Process Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2019 U.S. Dist. LEXIS 182349, at *10 (E.D. Pa. Oct. 22, 2019) ("The tangentially relevant NAD and NARB reports are inadmissible ….").

*Ninth*, the "customary contingency fee would likely range between thirty and forty percent of the recovery." *Whiteley v. Zynerba Pharm., Inc*., No. 19-4959, 2021 U.S. Dist. LEXIS 176101, at *37 (E.D. Pa. Sep. 16, 2021). This is consistent with the fee request.

*Tenth*, the Settlement contains innovative terms. For example, to ensure the best notice practicable, it accommodated Amazon sending a direct notice of the settlement to those who purchased Air Purifiers from their website. *See* Agreement, ¶ 4.2(F). Class Counsel in consumer class actions often neglect to subpoena third party retailers, which necessitates reliance on publication notice. Such notice can be expensive and less effective at reaching the Class.

### B.  A Lodestar Cross-Check Confirms the Reasonableness of the Fee

The Third Circuit suggests that when district courts use the percentage-of-recovery method, they also employ the lodestar method to cross-check the fee and ensure that it is reasonable. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate …." *See id.* The cross-check occurs by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. Multiples between one and four are frequently awarded in common fund cases. *See Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.*), No. 99-5555, 243 F.3d 722, 742 (3d. Cir. 2001).

Here, Class Counsel's lodestar is $405,308.70, which represents a *negative* multiplier. *See* Supp. Rathod Decl., ¶ 4 (M&R lodestar: $384,008.70); Declaration of P. Bradford deLeeuw ("deLeeuw Decl.") ¶ 5. That is, Class Counsel are requesting a total of $410,000 in fees and expenses, and have $23,204.84 in expenses, *see* Supp. Rathod Decl., ¶ 7, which means the request for attorneys' fees alone is $386,795.16. This yields a negative fee multiplier of 1.04. Negative multipliers are strong evidence of the reasonableness of a fee request. *See, e.g., In re Fasteners Antitrust Litig.,* No. 08-md-1912, 2014 U.S. Dist. LEXIS 9990, at *21 (E.D. Pa. Jan. 27, 2014). Class Counsel's partner rates range from $750-$919. The vast majority of the work was performed by Jason Rathod, a partner at Migliaccio & Rathod LLP based in Washington D.C., who

used his standard rate of $764 an hour. These rates are on the higher end of those that have been approved by Delaware courts. *See, e.g., State v. Overstock. co, Inc*., 2019 WL 5420100, at *4 (Del. Super. Ct. Oct. 23, 2019) (finding hourly rates ranging from $316-$528 for associates and $640-$880 for partners reasonable). It is common in consumer class actions in this circuit, however, for courts to credit out of state counsel's standard rates for complex class action matters. *See, e.g., Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *55 (D.N.J. Mar. 22, 2013). Moreover, out of state counsel have special expertise in the area of consumer product class actions and such special expertise can be accorded deference in evaluating rates. *See, e.g., Rothschild Dig. Confirmation LLC v. CompanyCam, Inc*., No. 19-1109 (MN), 2021 U.S. Dist. LEXIS 34084, at *2-3 (D. Del. Feb. 23, 2021) (considering out of state counsel's expertise in determining an appropriate rate); Supp. Rathod Decl., ¶ 6; deLeeuw Decl., ¶ 14. Perhaps most importantly, because the lodestar cross-check results in a negative multiplier, a rigorous examination of counsel's rates is unnecessary because even if they were considered "inflated," the end result would, at most, be a very small positive multiplier well-within the accepted 1-4 range. *See In re Synchronoss Techs., Inc.*, No. 20-07150 (FLW), 2021 U.S. Dist. LEXIS 238014, at *39-41 (D.N.J. Dec. 13, 2021).

## III.   The Court Should Approve Service Awards of $5,000 to the Class Representatives

The Third Circuit has recognized the appropriateness of giving a service award to class representatives, particularly in common fund cases. *See Sullivan*, 667 F.3d 273, 333, n.65 (3d Cir. 2011) ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."). The Settlement here recognizes this principle by providing service award payments of $5,000 to each of the

Class Representatives. *See* Agreement, ¶ 6.1. These Class Representatives were the principal catalysts to achieving this result for the Class. They participated in numerous conferences and meetings with their attorneys, searched for and produced documents to their attorneys that were relevant to their claims in the litigation, and stayed abreast of significant developments in the case. *See* Rathod Decl., ¶ 24.

Consistent with the law and terms of the Settlement, it is appropriate for the Class Representatives to receive a service award. *See Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *54 (E.D. Pa. May 11, 2016) ("[The class representatives'] efforts made this Settlement possible, and they are thus entitled to the modest [$5,000] service awards sought."); *Talone v. American Osteopathic Ass'n,* No. 1:16-CV04644-NLH-JS, 2018 WL 6318371, at *17 (D.N.J. Dec. 3, 2018) ($15,000 to each plaintiff); *Granillo v. FCA US LLC*, Civil Action No. 16-153 (FLW) (DEA), 2019 WL 4052432, at *12 (D.N.J. Aug. 27, 2019) (approving $5,000 in service awards and noting that "[t]he amount requested is similar to amounts awarded by courts in this District"); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *23-24 (D.N.J. Apr. 8, 2011) (approving service award payments of $10,000 to each of the named plaintiffs). Plaintiffs respectfully request that the Court approve the requested service awards here.

**CONCLUSION**

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court grant final approval and enter the proposed order in its entirety.

Dated:  December 21, 2021

**DELEEUW LAW LLC**

*/s/ P. Bradford deLeeuw*

P. Bradford deLeeuw (Del. Bar # 3569)
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
E-mail: brad@deleeuwlaw.com

*Plaintiffs' counsel*

**OF COUNSEL:**

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H St., NE
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
E-mail: nmigliaccio@classlawdc.com
        jrathod@classlawdc.com

*Plaintiffs' counsel*

21